Ms. Janet Lander Escambia County Attorney 14 West Government Street, Room 411 Pensacola, Florida 32502
Dear Ms. Lander:
On behalf of the Board of County Commissioners of Escambia County, you have asked for my opinion on substantially the following question:
Does section 286.011, Florida Statutes, the Florida Government in the Sunshine Law, apply to official corporate governance meetings of:
(a) individual boards of directors of volunteer fire departments that provide firefighting services to the county paid for by the county; and
(b) to meetings of the Escambia County Volunteer Firemen's Association, Inc., which was established by the county's volunteer fire departments to discuss firefighting issues of mutual concern?
Escambia County is a non-charter county governed by a five-member board of county commissioners. Pursuant to section 125.01(1)(d), Florida Statutes, the board of county commissioners is authorized and empowered to provide fire protection services to the county's residents.
To fund these fire protection services, the Escambia County Board of County Commissioners established a municipal services benefit unit (MSBU), allowing the county to levy an assessment each year on residences and businesses within the unincorporated area. The current assessment generates approximately $9.3 million per year in revenue and is collected through the Escambia County Tax Collector's Office using the uniform method of collection for non-ad valorem assessments.
All revenue generated by this MSBU must be used exclusively for fire protection and first responder services. These monies include operating expenses for fuel, oil, station utilities, office supplies, personal protective equipment, fire trucks, fire stations, and other firefighting tools and equipment. In addition, the MSBU supplies funds for salaries and benefits for approximately 60 career employee firefighters and support personnel and stipends to volunteer firefighters for their expenses.[1]
The Escambia County Fire Rescue Department operates as a combination fire service utilizing both volunteers and career employee personnel. Career employee firefighters operate approximately ten engine companies throughout Escambia County, from Monday through Friday, between the hours of 7:00 a.m. and 4:00 p.m., while approximately 400 volunteers deliver firefighting services to the county at all other times. The volunteer firefighters respond from sixteen fire stations strategically located throughout the county and manned by a particular community's volunteer fire department.
The volunteer fire departments are all nonprofit corporations established under Chapter 617, Florida Statutes, for the purpose of firefighting in Escambia County, and each is created by a corporate charter that is its official governing document. The county does not dictate through contract or ordinance how the volunteer fire departments operate, including their personnel procedures or other matters of internal governance, or the performance of their fire suppression services. Escambia County does fund the volunteer fire departments and suggests their voluntary compliance with certain county firefighting operating guidelines.
Pursuant to a form agreement between Escambia County and each volunteer fire department, "[t]he fire departments have been created into districts that serve the County in a Volunteer basis and are funded through a Municipal Services Benefit Unit."[2] The departments maintain a filing system documenting the firefighters' compliance with the "Volunteer Firefighters Association Standard Operating Guidelines" and the contract between the departments and the firefighters. These files are required to be retained in accordance with statutory requirements and are subject to audit by the Escambia County Office of the Clerk of the Circuit Court.[3]
The volunteer fire departments agree to indemnify the county for all claims made for "personal injury, death, property damage, direct or consequential damages, or economic loss" arising in connection with the volunteer department's negligent performance of the agreement or in connection with the agreement.[4] You have advised this office that each volunteer fire department has entered into such an agreement with the county.
Under these circumstances you have asked whether the meetings of the individual boards of directors of these volunteer fire departments are subject to section 286.011, Florida Statutes, the Government in the Sunshine Law.
Florida's Government in the Sunshine Law, section 286.011, Florida Statutes, provides that all meetings of a board or commission of "any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision . . . at which official acts are to be taken are declared to be public meetings open to the public at all times[.]"[5] The courts of this state have recognized that the provisions of this statute should be liberally construed to give effect to its public purpose.[6]
Florida courts have stated that it was the Legislature's intent to extend application of the Sunshine Law so as to bind "every `board or commission' of the state, or of any county or political subdivision over which it has dominion and control."[7] The statute has been held applicable to private organizations when the private entity has been created by a public agency, when there has been a delegation of the public agency's governmental functions, or when the private organization plays an integral part in the decision-making process of the public agency.[8]
In interpreting the Sunshine Law, the courts have looked to the provisions of the Public Records Law, Chapter 119, Florida Statutes, stating that as the policy behind Chapter 119, Florida Statutes, and the policy behind section 286.011, Florida Statutes, are similar, they should be read in pari materia.[9] In determining the applicability of either the Public Records Law or the Sunshine Law to a private organization, the courts and this office have generally reviewed the relationship between the private entity and the public agency. For example, the Supreme Court of Florida in News and Sun-Sentinel Company v. Schwab, Twitty HanserArchitectural Group, Inc.,[10] articulated a totality of factors test to determine whether a private entity is acting "on behalf of" a public agency for purposes of Chapter 119, Florida Statutes. This analysis involves a review and consideration of the following factors:
"1) Creation — did the public agency play any part in the creation of the private entity? 2) Funding — has the public agency provided substantial funds, capital or credit to the private entity or is it merely providing funds in consideration for goods or services rendered by the private entity? 3) Regulation — does the public agency regulate or otherwise control the private entity's professional activity or judgment? 4) Decision-making process — does the private entity play an integral part in the public agency's decision-making process? 5) Governmental function — is the private entity exercising a governmental function? 6) Goals — is the goal of the private entity to help the public agency and the citizens served by the agency?"
Using this test, the Schwab Court concluded that an architectural firm, under contract with a school board to provide architectural services associated with the construction of school facilities, was not "acting on behalf of" the school board. Therefore, the architectural firm was not subject to the Public Records Law.
The Fifth District Court of Appeal in News-Journal Corporation v.Memorial Hospital-West Volusia, Inc.,[11] reviewed the relationship between a hospital authority and the not-for-profit company leasing the public hospital's facilities for purposes of Article I, section 24, Florida Constitution.[12] The district court recognized a distinction between a contract in which the private entity provides services to a public body and a contract in which the private entity provides services in place of the public entity:
"If one merely undertakes to provide material — such as police cars, fire trucks, or computers — or agrees to provide services — such as legal services, accounting services, or other professional services — for the public body to use in performing its obligations, then there is little likelihood that such contractor's business operation or business records will come under the open meetings or public records requirements. On the other hand, if one contracts to relieve a public body from the operation of a public obligation — such as operating a jail or providing fireprotection — and uses the same facilities or equipment acquired by public funds previously used by the public body then the privatization of such venture to the extent that it can avoid public scrutiny would appear to be extremely difficult, regardless of the legal skills lawyers applied to the task."[13] (e.s.)
The court held that the not-for-profit company, which was specifically created to contract with a public hospital authority for the operation of the authority hospital established by public funds, was subject to constitutional open records and open meeting requirements. The Florida Supreme Court agreed with the lower appellate court that the Sunshine Law applied to the not-for-profit company's performance of the agreement based on the Authority's delegation of the performance of its public purpose to the not-for-profit company.[14]
While the mere fact that the volunteer fire departments receive county funding would not, in and of itself, subject them to the requirements of section 286.011, Florida Statutes,[15] the volunteer fire departments appear to act in the place of the county's regular career fire protection service in areas of the county not served by the county's service or after the working hours of the county's career firefighters. The county funds these fire protection services through a municipal services benefit unit that pays for capital construction and repair of fire stations as well as equipment purchases and stipends to individual firefighters. Thus, the volunteer fire departments provide fire protection and use facilities and equipment acquired with public funds. While the county does not appear to be involved in the day-to-day operation of the volunteer departments, the purpose of these departments — that is fire suppression — is accomplished through the county's arrangement with the volunteer fire departments, which clearly provide a service to the citizens of the county.
Accordingly, it is my opinion that section 286.011, Florida Statutes, applies to official corporate governance meetings of individual boards of directors of volunteer fire departments that provide firefighting services to and use facilities and equipment acquired with public funds from Escambia County.
To the extent that this conclusion is inconsistent with earlier opinions of this office, those opinions are hereby receded from and this opinion controls. In Attorney General's Opinion 83-01 this office was asked whether the Government in the Sunshine Law applied to meetings of the Lealman Volunteer Fire Company, Inc., a private nonprofit corporation that provided fire protection services to the Lealman Fire Control District. As is the case with the volunteer fire departments involved in your question, the operating budget of the Lealman volunteer fire company was approved and funded by the county. This office stated that "[t]he volunteer fire company is not a state or local governmental agency nor can I conclude that the submission of a budget to the fire protection agency in order to receive public funds is sufficient in and of itself to subject the private organization to the requirements of s. 286.011." The opinion concluded that the Lealman Volunteer Fire Company, Inc., was not subject to section 286.011, Florida Statutes. The opinion recognized theSchwartzman v. Merritt Island Volunteer Fire Department case, which had recently held that a volunteer fire department was subject to the Public Records Law, but distinguished the test used to determine applicability of the Public Records Law from that used for questions involving the Government in the Sunshine Law.[16]
As discussed above, the case law evolving since 1983 has focused on the distinction between a private entity providing services to a public body and a private entity providing services in place of the public entity and has softened the line between the test for the applicability of the Government in the Sunshine Law and the Public Records Law. In light of this analysis, as most clearly articulated in News-Journal Corporationv. Memorial Hospital-West Volusia, Inc., it is my opinion that this earlier opinion is no longer an accurate reflection of the law. Thus, this office recedes from the conclusion reached in Attorney General's Opinion 83-01.
Question Two
You have also asked whether meetings of the Escambia County Volunteer Firemen's Association, Inc., are subject to the Government in the Sunshine Law.
In 1984, the volunteer fire departments formed the Escambia County Volunteer Firemen's Association, Inc. The association was incorporated as a nonprofit corporation for the purpose of providing a forum for the sixteen volunteer fire departments to meet and discuss common county firefighting concerns and issues. Prior to the establishment of the present county fire service, this organization was the primary point of contact among the board of county commissioners and the member volunteer fire departments. The organization established an executive committee, the members of which are the officers of the corporation. This committee was responsible for developing proposed annual budgets for the volunteer fire departments and creating guidelines for their departments' operations. Although the county fire chief has now assumed responsibility for such county fire service matters, the organization is still active in assisting the county in an advisory role concerning county-wide fire suppression issues through meetings with county officials and the determination of association policies relating to the volunteer fire departments.
As discussed above, the Government in the Sunshine Law requires that "[a]ll meetings of any board or commission of any state agency or authority or of any county, municipal corporation, or political subdivision . . . at which official acts are to be taken are declared to be public meetings open to the public at all times . . . ." The basic requirements of the Sunshine Law are that meetings of a board or commission be open to the public, reasonable notice of such meetings be given, and minutes of the meeting be taken.
Florida courts have held that the decision-making process is subject to the Sunshine Law, not just the formal assemblage of a public body at which voting to ratify an official decision is carried out. The statute extends to discussions and deliberations as well as to formal action taken by a public body.[17] Therefore, the law is generally applicable to any gathering where two or more members of a public board or commission discuss some matter on which foreseeable action will be taken.
It is well settled that there is no "government by delegation" exception to the Sunshine Law that would allow public agencies to avoid their responsibilities and conduct public business in secret by use of an alter ego.[18] Moreover, Florida case law supports a liberal application of the Sunshine Law to give effect to its public purpose.[19] It would be consistent with the purpose of the Government in the Sunshine Law to find that the creation of an organization to serve as the primary point of contact among the Escambia County Commissioners and the member volunteer fire departments to engage in incipient decision-making affecting the county is a board or commission subject to the requirements of section286.011, Florida Statutes.
However, according to your letter, the County Fire Chief now has assumed responsibility for county fire service matters and the organization now acts primarily to provide a forum for the sixteen volunteer fire departments to meet and discuss common firefighting concerns and issues. In Attorney General's Opinion 2000-08, this office considered whether the Sunshine Law was applicable to a fire commissioners' forum, a nonprofit corporation created by a fire control and rescue district in Lee County whose membership was limited to the fire control districts in the county and which held monthly informal meetings attended by fire chiefs and fire commissioners of the various local governments in Lee County. This office concluded that if the forum operates as a collegial body for incipient decision-making, then it too would be subject to the Sunshine Law. As an organization providing an opportunity to network and discuss common concerns, however, the forum would not by itself be subject to the open meetings law.
In sum, it is my opinion that meetings of the Escambia County Volunteer Firemen's Association, Inc., for the purpose of providing a forum for the county volunteer fire departments to meet and discuss common county firefighting concerns and issues are not subject to the Government in the Sunshine Law.
Sincerely,
Charlie Crist Attorney General
CC/tgh
[1] See Agreement between Escambia County and ___________ Volunteer Fire Department, paragraph 3.
[2] Ibid, paragraph 2.
[3] Supra n. 1 at paragraph 4.
[4] Supra n. 1 at paragraph 8.
[5] Section 286.011(1), Fla. Stat.
[6] See, e.g., Board of Public Instruction of Broward County v. Doran,224 So.2d 693 (Fla. 1969); Wood v. Marston, 442 So.2d 934, 935 (Fla. 1983) (statute should be construed to effect its remedial and protective purposes).
[7] See Times Publishing Company v. Williams, 222 So.2d 470, 473 (Fla. 2d DCA 1969), disapproved in part on other grounds, Neu v. Miami HeraldPublishing Company, 462 So.2d 821 (Fla. 1985).
[8] See, e.g., Ops. Att'y Gen. Fla. 92-53 (1992) (direct support organization created for purpose of assisting public museum subject to s. 286.011); 83-95 (1983) (where county accepted services of nongovernmental committee to recodify and amend county's zoning laws, committee subject to Sunshine Law.)
[9] See, e.g., Cape Coral Medical Center, Inc., v. News-PressPublishing Company, Inc., 390 So.2d 1216, 1218 (Fla. 2d DCA 1980); Krausev. Reno, 366 So.2d 1244, 1252 (Fla. 3d DCA 1979), in which the court looked to the Public Records Law's definition of "agency" in interpreting the term for the Sunshine Law since "[t]he statute most analogous to the Sunshine Law is Chapter 119, Florida Public Records Law, which also exists to assure openness in and access to government."
[10] 596 So.2d 1029 (Fla. 1992).
[11] 695 So.2d 418 (Fla. 5th DCA 1997).
[12] See Art. I, s. 24, Fla. Const., providing that the public has a right to review the records of any public body "or persons acting on their behalf," and that any meeting of a collegial public body in which public business is discussed or transacted shall be open to the public.
[13] 695 So.2d at 420.
[14] Memorial Hospital-West Volusia, Inc., v. News-JournalCorporation, 729 So.2d 373 (Fla. 1999).
[15] See, Ops. Att'y Gen. Fla. 74-22 (1974) and 78-161 (1978) (receipt of public funds by private nonprofit corporation under contract with public agency did not subject corporation to s. 286.011).
[16] Schwartzman v. Merritt Island Volunteer Fire Department,352 So.2d 1230 (Fla. 4th DCA Fla. 1977), cert. den., 358 So.2d 132 (Fla. 1978).
[17] See Board of Public Instruction of Broward County v. Doran,224 So.2d 693, 699 (Fla. 1969), in which the Court recognized the right of the public to be present and heard during all phases of enactments by public boards; Krause v. Reno, 366 So.2d 1244 (Fla. 3d DCA 1979). And seeTimes Publishing Company v. Williams, 222 So.2d 470, 473 (Fla. 2d DCA 1969), stating: "Every step in the decision-making process, including the decision itself, is a necessary preliminary to formal action. It follows that each such step constitutes an `official act,' an indispensable requisite to `formal action,' within the meaning of the act."
[18] See Op. Att'y Gen. Fla. 00-08 (2000) (applicability of s. 286.011, Fla. Stat., to meetings of the Lee County Fire Commissioner's Forum) and Inf. Op. to Rep. Wiles, February 14, 2002, relating to the Government in the Sunshine Law and meetings of the State University Presidents Association.
[19] See, e.g., Wood v. Marston, 442 So.2d 934 (Fla. 1983); Board ofPublic Instruction of Broward County v. Doran, 224 So.2d 693 (Fla. 1969) (statute should be broadly construed to effect its remedial and protective purpose).